UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RYAN A. LINGFORD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:20CV1623 ACL |
| DARREN KLEMP, et al., | ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Ryan A. Lingford, currently an inmate at the Southeast Correctional Center ("SECC"), brought this action *pro se* under 42 U.S.C. § 1983, alleging the violation of his constitutional rights during his incarceration at the Farmington Correctional Center ("FCC"). Presently pending before the Court is Defendants' Motion for Summary Judgment. (Doc. 50.) Lingford did not respond to Defendants' Motion for Summary Judgment, and the time for doing so has expired.

**I.  Background**

In his Amended Complaint, Lingford alleges that he was subjected to excessive force by Defendant correctional officers Darren Klemp and Ryan Hanna during his incarceration at FCC. (Doc. 11 at 3-4.)  He claims that, on July 13, 2020, Klemp hit Lingford with his hands and knees and slammed him to the ground, both before and after Lingford was restrained in handcuffs. Lingford alleges that Hanna then sprayed him with a "full spray" of pepper spray.  Lingford states that after he was cuffed, "assault video footage will show me being manhandled roughly taking [me] out of the cell." *Id.* at 4.  Lingford further claims that Klemp and Hanna retaliated against him for filing complaints by leveling a false accusation against him.  Lingford alleges that he suffered a back injury and nerve damage, and also suffers from nightmares and post-

1

traumatic stress disorder as a result of the incident. He seeks monetary relief from each defendant.

In their Motion for Summary Judgment, Defendants argue that they are entitled to judgment as a matter of law because Lingford cannot establish that Defendants violated his rights under the First or Eighth Amendment. Defendants further argue that they are entitled to qualified immunity. Defendants have submitted video surveillance footage from a camera located outside of Lingford's cell. (Def's Ex. E.)

Lingford did not respond to Defendants' Motion for Summary Judgment despite being granted an extension of time to do so. (Doc. 64.)

Defendants argue that due to Lingford's failure to respond to the Motion for Summary Judgment, all facts asserted by Defendants should be deemed admitted and no genuine issue of material fact exists for trial. (Doc. 61.)

## II.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment to a moving party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party, but only if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Mere "metaphysical doubt as to the material facts" is insufficient to defeat summary judgment. *Id.* A party asserting that a fact is genuinely disputed must support the assertion by citing to particular parts of materials in the record. Fed. R. Civ. P. 56(c).

In reviewing the record, a court must not weigh evidence at the summary judgment stage but instead should decide simply whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Where the record taken as a whole could not lead a

rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott*, 550 U.S. at 380. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* Thus, accurate videos of events in question can allow a court to determine how events transpired without weighing evidence. *See White v. Jackson*, 865 F.3d 1064, 1077 (8th Cir. 2017) (noting that given "video and audio evidence" in the case, the court "need not accept [a party's] version of the facts").

  Lingford did not respond to Defendants' Statement of Undisputed Material Facts (Doc. 20-1), as required under Federal Rule of Civil Procedure ("FRCP") 56 and Local Rule 4.01(E). Lingford's status as a *pro se* litigant does not excuse him from responding to Defendants' Motion "with specific factual support for his claims to avoid summary judgment," or from complying with local rules. *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001). With his failure to respond, Lingford is deemed to have admitted all of the facts in Defendants' statement of uncontroverted facts. *Turner v. Shinseki*, No. 4:08-CV-1910 CAS, 2010 WL 2555114, at *2 (E.D. Mo. Jun. 22, 2010) (citing *Deichmann v. Boeing Co.*, 36 F. Supp.2d 1166, 1168 (E.D. Mo. 1999), *aff'd* 232 F.3d 907 (8th Cir. 2000), *cert. denied*, 531 U.S. 877). Summary judgment is not granted in favor of Defendants as a result of Lingford's failure to properly respond to Defendants' statement of material facts. Instead, the Court deems the facts set forth by Defendants as true. *Reasonover v. St. Louis Cty., Mo.*, 447 F.3d 569, 579 (8th Cir. 2006). Defendants must still establish that they are entitled to judgment as a matter of law. *See id.*

**III.     Facts**[1]

At all times relevant to this action, Defendants Darren Klemp and Ryan Hanna were each employed and working as a Correctional Officer I at FCC.  On the morning of July 13, 2020, the mental health department at FCC put Lingford on suicide watch.  At 8:24 a.m., Klemp and Hanna walked to Lingford's cell to place him on suicide watch, which would ultimately require transferring Lingford to another cell.

When Klemp and Hanna arrived at Lingford's cell at 8:24 a.m., they noticed water coming from underneath his cell door.  The water was pouring out of Lingford's cell and down to the first floor, which caused Correctional Officer Amanda Crocker to slip in the water on the first floor.  Lingford intentionally flooded his cell the morning of July 13, 2020.  He took bars of soap, cut them in half, got them wet like plaster, and stuck the substance across the bottom of the cell door.  Lingford also stopped up the toilet by putting a Styrofoam cup in the drain hole and pushing the toilet button until the water flowed over the bowl and into the cell.  He began running the water in the toilet around 5:00 or 6:00 a.m., after breakfast.  Once the cell filled up with water, Lingford kicked the soap out of the door.  Water went everywhere, flooding the entire top walk.  Lingford provided several reasons for flooding his cell.  He stated, "I just got souped up for it, wanting to do it, and then I felt staff were ignoring me, mental health wasn't answering my MSRs, nobody didn't want to come talk to me…" (Doc. 52-1 at 32.)  Lingford also noted that he flooded his cell to "get back at the other offenders on the top tier" so that they would "wake up to water hitting their mattresses." *Id.* at 36-37.

Klemp and Hanna knew of Lingford's violent history before they entered the cell on July 13, 220.  They knew Lingford had threatened correctional officers with physical harm; that he

---

[1]The Court's recitation of the facts is taken from Defendants' Statement of Uncontroverted Material Facts.  (Doc. 52.)

threatened their family members; that he routinely disobeyed orders; and that he possessed a weapon on one occasion.  Lingford preplanned the flooding of his cell and kicked his cell door to "get their attention."  *Id.* at 23.  Flooding a cell and kicking a cell door are conduct violations according to the Offender Rulebook.

Lingford was on his feet standing by the cell door when Klemp and Hanna entered the cell.  At 8:24 a.m., Klemp signaled the control room officer to open Lingford's cell door.  The cell door opened.  Klemp went into the cell first, immediately followed by Hanna.  Klemp ordered Lingford to stand and face the back wall, and Klemp initially believed Lingford was going to comply.  Lingford tried to push Klemp away when he entered the cell, because he felt there was no need for him to enter the cell.  Lingford explained that he tends to react out of anger.  He tried to punch Klemp in the face.  Hanna then sprayed Klemp with oleoresin capsicum ("OC") spray with a ½ second burst.  Lingford did not get any OC on his face.  Klemp took Lingford to the floor with an arm restraint taught in training.  Together, he and Hanna put arm restraints on Lingford.  Lingford's arms felt slick like he had put lotion on them.

Klemp and Hanna escorted Lingford to a watch cell.  They were in and out of Lingford's cell in approximately one minute, entering at 8:24:16 and exiting at 8:25:18.  Klemp and Hanna escorted Lingford downstairs into a watch cell.  They entered the watch cell with Lingford at 8:25:40.  They removed Lingford's clothing and placed him in a suicide smock.  Klemp and Hanna exited the cell at 8:27:27 and left Lingford inside, to be seen by a member of the medical staff.

It is standing operating procedure for a prisoner to be examined by medical personnel after a use of force.  Lingford was seen by LPN Holly Queen at approximately 8:45 a.m. on July 13, 2020.  Queen prepared Medical Accountability Records System Nurse Encounter Notes

("Notes"). The Notes were prepared by her in the normal course of business at FCC. Lingford complained of injury to the left eye and back of the head. Notes state there was "an abrasion to the left eye lid/no injury observed or palpated to the back of the head." (Doc. 52-5 at 1.) Lingford did not complain of eye burning or difficulty breathing. No marks were observed on Lingford's trunk, limbs, or head. Queen instructed Lingford to flush his eyes with normal saline or water, and to flush his mucus membranes with copious amounts of water. Lingford indicated that he understood Queen's instructions. Lingford agrees that he had an abrasion to the left eye, but states that there was also a bump or bumps to the back of his head that were sore. He testified that his eyes were burning. When asked if he had difficulty breathing, he replied "yes and no." (Doc. 52-1 at 44.)

## IV.   Discussion

### A. Lingford's First Amendment Claim

In the Amended Complaint, Lingford argues that Klemp and Hanna entered his cell and used excessive force against him in retaliation for filing Informal Resolution Requests ("IRRs") and making Prison Rape Elimination Act ("PREA") complaints, in violation of the First Amendment.

Defendants argue that Lingford's First Amendment retaliation claim fails because Lingford is unable to establish a causal connection between his protected activity and any actions taken by the Defendants.

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions." *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). To succeed, a plaintiff alleging a First Amendment retaliation claim must prove that "(1) [the plaintiff] engaged in a protected activity, (2) the

6

government official took adverse action against [the plaintiff] that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Id.* (internal quotation marks omitted); *accord Quraishi v. St. Charles County*, 986 F.3d 831, 837 (8th Cir. 2021); *Molina v. City of St. Louis,* No. 4:17-CV-2498 AGF, 2021 WL 1222432, at *6 (E.D. Mo. Mar. 31, 2021) (citation omitted).

With respect to the third prong, the plaintiff must demonstrate that the retaliatory motive was a "substantial factor" of the adverse action. *Peterson*, 754 F.3d at 602 (citing *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010)). In other words, Plaintiff must show he would not have suffered the adverse action but for his protected activity. *Id.*

Plaintiff claims Defendants retaliated against him for filing IRRs and PREA complaints. Defendants do not dispute that the prison grievance process is a protected First Amendment activity. Defendants, however, argue that Lingford has failed to present facts or evidence showing an IRR or PREA complaint was filed prior to Defendants' use of force. As a result, Defendants contend that Lingford cannot show a causal connection between his use of the grievance process and Defendants' adverse action.

When asked at his deposition whether he made any PREA allegations against Klemp or Hanna before the use of force incident, Lingford responded: "Not that I recall." (Doc. 52-1 at 26-27.) He similarly testified that he "did not recall" filing any IRRs against Klemp or Hanna prior to July 13, 2020. *Id.* at 35-36. Lingford has offered no evidence to show Klemp and Hanna went to his cell for any reason other than to carry out the order to place Lingford on suicide watch. In fact, he testified that Klemp and Hanna "were just the ones that were there at the time." *Id.* at 37. Thus, Lingford has failed to raise any genuine issue of material fact

demonstrating a causal connection between Defendants' conduct and the exercise of his First Amendment rights.

Accordingly, Defendants' Motion for Summary Judgment will be granted as to Lingford's First Amendment retaliation claim.

### B. Lingford's Eighth Amendment Claim

The Amended Complaint alleges that Klemp and Hanna used excessive force in violation of the Eighth Amendment when they entered his cell on July 13, 2020. Defendants argue that the undisputed facts reveal that Defendants used force in a good faith effort to maintain or restore discipline.

The Eighth Amendment protects incarcerated prisoners from "cruel and unusual punishment" by forbidding the "unnecessary and wanton infliction of pain" at the hands of corrections officers. U.S. Const. Amend. VIII; *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see also Hudson v. McMillian*, 503 U.S. 1, 5 (1992). The "core judicial inquiry" for an excessive force claim is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *See Whitley*, 475 U.S. at 321; *Hudson*, 503 U.S. at 6-7. "Resolution of the constitutional issue turns on the circumstances of the individual case." *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002). "The test is whether the officer's use of force was reasonable under the circumstances, or whether it was punitive, arbitrary, and malicious." *Id.* at 873. Relevant factors include the need for force, the relationship between the need and the amount of force used, and the extent of injury inflicted. *See, e.g.*, *Whitley*, 475 U.S. at 321; *Treats*, 308 F.3d at 872.

To establish a claim for the excessive use of force, plaintiffs must demonstrate that the force was used maliciously and sadistically to cause harm, rather than in a good faith effort to maintain or restore discipline. *See Hudson*, 503 U.S. at 6-7.

The undisputed facts reveal that Klemp and Hanna knew Lingford had a violent history, had threatened correctional officers, and had routinely disobeyed orders. (Doc. 52-9 at 5; 52-10 at 5.) Lingford had flooded his cell and kicked the cell doors, both violations according to the Offender Rulebook. (Doc. 52-7 at 19.) When Defendants ordered Lingford to stand and face the back wall upon entering his cell, Lingford did not comply. Instead, Lingford admitted that he tried to push Klemp away. (Doc. 52-1 at 29.) At that point, Hanna sprayed Lingford with OC spray with a ½ second burst. No OC got on Lingford's face. *Id.* at 17. Defendants then took Lingford to the floor, placed him in hand restraints, and escorted him to a watch cell.

Additionally, the Court has reviewed the surveillance video footage. (Def's Ex. E.) The video footage does not capture the use of force incident in Lingford's cell, but does depict Klemp and Hanna walking out of the cell with Lingford. Contrary to Lingford's assertion that Klemp and Hanna roughly "manhandled" him as they were taking him out of the cell, the video shows the officers calmly escorting Lingford from his cell to the watch cell.

There is no indication in the record that Defendants' usage of force was excessive. The officers used only the amount of force necessary to obtain Lingford's compliance with their directives. Lingford was seen by a nurse approximately twenty minutes later, and suffered no injuries other than an abrasion to the left eye lid. (Doc. 52-13 at 2.) Because there is no evidence that the use of force was malicious or sadistic, the Court will grant summary judgment to Defendants on Lingford's excessive force claim.

9

Defendants also argue that they are entitled to qualified immunity. Having found that Defendants are entitled to summary judgment on the merits of Lingford's claims, it is unnecessary to determine whether qualified immunity also applies.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 50) is **granted**. A separate Judgment in favor of Defendants will accompany this Memorandum and Order.

*abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of February, 2023.